**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272


-    and -

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.
*sultzerj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747


*Counsel for Plaintiff and the Class*

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tony Luib, individually on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| -against- | **CLASS ACTION COMPLAINT** |
| Henkel Consumer Goods Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Tony Luib (hereinafter "Plaintiff") individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF ACTION

1.     Plaintiff brings this action against Defendant Henkel Consumer Goods Inc. ("Defendant" or "Henkel") on behalf of himself and a class consisting of all consumers throughout the United States and the State of New York who purchased Defendant's Purex Natural Elements Laundry Detergent Linen & Lilies Scent, Purex Natural Elements Laundry Detergent Lilac & White Lavender Scent, and Purex Natural Elements Laundry Detergent Tropical Splash Scent, or similarly "Natural" labeled Purex detergents ("the Products"), at any time during the applicable statute of limitations period up to and including the present (the "Class Period").

2.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign designed to appeal to health and environmentally conscious consumers, and touting Defendant's Products as containing "Natural Elements." However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain various artificial and synthetic ingredients.

3.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products contain "Natural Elements" when purchasing the Products. Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to contain "Natural Elements." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they

contain "Natural Elements," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.      Defendant's conduct violated and continues to violate, inter alia, New York General Business Law §§ 349 and 350 and the consumer protection statutes of all 50 states. Defendant breached and continues to breach its express and implied warranties regarding the Products. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of New York and resides in Long Island. Defendant is a corporation with its principal place of business in Scottsdale, Arizona and is organized and existing under the laws of the State of Delaware. Upon information and belief, the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

6.      The Court has personal jurisdiction over the Defendant because the Defendant conducts and transacts business in the State of New York, has contracts to supply goods within the State of New York, and supplies goods within the State of New York.

7.      Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.

## PARTIES

**Plaintiff**

8.      Plaintiff is a resident of the State of New York, residing in Brooklyn, New York. Plaintiff purchased Purex Natural Elements (Linen and Lilies scent) from a retail supermarket in Brooklyn, New York in 2016.

9.      Plaintiff purchased the Product because he saw the Product's labeling, advertising, and packaging stating that the Product contains "Natural Elements." Plaintiff relied on Defendant's false, misleading, and deceptive representations about the Product. Plaintiff believes that natural products do not contain synthetic, highly processed, or non-natural ingredients. Had Plaintiff known the truth – that the representations he relied upon in making his purchase were false, misleading, and deceptive –he would not have purchased the Products at a premium price.

**Defendant**

10.     Defendant is a corporation within Arizona that processes, handles, sells, markets, advertises, promotes, sells and distributes the Purex name brand product throughout the United States.

## FACTUAL BACKGROUND

11.     American consumers are health and environmentally conscious and are increasingly expressing a preference for natural products. As is explained in an article in *The Economist*, "natural" products are a fast growing market. Perceiving natural products to be safer and more environmentally friendly – consumers purchase them to promote good health, sustain the environment, and to avoid the known and unknown dangers associated with synthetic

ingredients.[1] In 2010, sales of natural products grew 6% to $117 billion.[2] Consumers value all natural products for important reasons, including the perceived benefits of avoiding disease, protecting the environment, and attaining healthy wellness.

12.     Seeking to profit from consumers' desire for purportedly natural products, Defendant markets its Products as containing "Natural Elements."

13.     Defendant's representations that the Products contain "Natural Elements" are false and misleading because the Products contain multiple ingredients that are synthetic.

14.     Defendant's website is false and misleading given that it represents:

> Going green doesn't Mean You Have to Compromise on Clean. It may be hard to believe, but Purex's Natural Elements is an affordable plant-based, natural laundry detergent that is hypoallergenic and dye-free. Simply put, it is the best natural laundry detergent for sensitive skin. You might be wondering how we made a natural laundry detergent without driving up the cost. In fact, we've made Purex Natural Elements live up to the standard of incredible deep-down clean that you've come to expect from Purex. Made only with naturally sourced, plant-based ingredients and natural fragrance extracts – it's the perfect homemade laundry detergent alternative.

15.     The website also states: Purex Natural Elements laundry detergent contains naturally sourced ingredients and natural fragrance extracts that deliver the same great cleaning as regular Purex detergents……All varieties are hypoallergenic and free of dyes."

16.     United States regulatory organizations have clearly delineated between natural ingredients and synthetic ingredients.

---

[1] *Chemical Blessings What Rousseau Got Wrong*, THE ECONOMIST, Feb. 4, 2008, available at http://www.economist.com/node/10633398; *see also* Hunger Oatman-Standford, *What Were We Thinking? The Top 10 Most Dangerous Ads*, COLLECTORS WEEKLY (Aug. 22, 2012), http://www.collectorsweekly.com/articles/the-top-10-most-dangerous-ads/ (featuring advertisements for dangerous synthetic chemicals that were once marketed as safe).

[2] *About the Natural Products Association,* NATURAL PRODUCTS ASSOCIATION, http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a1 5ab-f44f-4473-aa6e-ba27ccebcbb8.

17.    As guidance of what a reasonable consumer may think is synthetic, the term "synthetic" is defined by federal statute as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. § 6502(21).

| Name of Product | Synthetic Ingredients | Photo of Product Packaging |
|---|---|---|
| Purex Natural Elements Laundry Detergent Linen & Lilies Scent | • Sodium Polyacrylate<br>• Methylisothiazolinone<br>• Lilial<br>• Benzyl Benzoate<br>• Disodium Distyurylbyphenyl Disulfonate<br>• Hexylcinnamaldehyde |  |

| Purex Natural Elements Laundry Detergent Lilac & White Lavender Scent | • Sodium Polyacrylate<br>• Methylisothiazolinone<br>• Lilial<br>• Disodium Distyurylbyphenyl Disulfonate<br>• Hexylcinnamaldehyde |  |
|---|---|---|
| Purex Natural Elements Laundry Detergent Tropical Splash Scent | • Sodium Polyacrylate<br>• Methylisothiazolinone |  |

18.     As is explained below, many of the Products' ingredients are artificial and synthetic:

a.     **Sodium Polyacrylate** is a synthetic polymer adjuvant and additive. It is produced by the polymerization of acrylic acid and subsequent hydrolysis of the polyacrylic acid with an aqueous sodium hydroxide solution. *See* 21 C.F.R. §173.73

b.     **Disodium Distyrylbiphenyl Disulfonate** is a synthetic ingredient.[3] Disodium Distyrylbiphenyl is produced "by the Honer-Wittig reaction of phosphonate derived from 1,4-bis-(chloromethyl)-biphenyl and triethyl phosphite with benzaldehyde-2-sulfonic acid."[4]

c.     **Lilial** is a synthetic concentrated aromatic ingredient used in fragrance compounds. Also known by its chemical name Methyl Benzoate. It is produced "[b]y heating methanol and benzoic acid in the presence of sulfuric acid, or by passing hydrogen chloride through a solution of benzoic acid and methanol."[5]

d.     **Methylisothiazolinone** is a synthetic, antimicrobial used to control slime-forming bacteria, fungi, and algae in cooling water systems, fuel storage tanks, etc. It is also used to control the growth of mold, mildew, and

---

[3] FDA, http://fdasis.nlm.nih.gov/srs/unii/I25R28R1YG

[4] Handbook of Detergents, Part F: Production, 553-554 (Uri Zoller & Paul Sosis eds., 2009), *available at* https://books.google.com/books?id=dXn3aB1DKk4C&pg=PA553&lpg=PA553&dq=disodium+distyrylbiphenyl+disulfonate+%26+manufacturing&source=bl&ots=eQhq-eH3p7&sig=5Cf2zH-zuL0PTdIHYZL6-0rSnuU&hl=en&sa=X&ved=0ahUKEwiDt4iQ8OrRAhXM6oMKHTAgA884ChDoAQg6MAY#v=onepage&q=dis odium%20distyrylbiphenyl%20disulfonate%20%26%20manufacturing&f=fals*e*

[5] PubChem, https://pubchem.ncbi.nlm.nih.gov/compound/7150#section=Use-and-Manufacturing.

sapstain on wood products.[6] It is produced through the chlorine-induced cyclization of 3.3'-dithiodipropionamides.[7] It is a known neurotoxin and is prohibited by the Natural Products Association from being included in products that are certified as natural.[8,]

    e.    **Hexylcinnamaldehyde** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515. Benzaldehyde, pyrrolidine, and diphenylamine are reacted under heat.[9] N-octanol is then added to the reaction to create α-hexycinnamaldehyde.[10]

    f.    **Benzyl Benzoate** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515. It is produced "from benzyl alcohol and sodium benzoate in the presence of triethylamine or transesterification of methyl benzoate with benzyl alcohol in the precese of an alkali benzyl oxide."[11]

    19.    Given the presence of these synthetic ingredients in the Products, Defendant's website representations and on-label representations that the Products contain "Natural Elements" is deceptive and misleading.

    20.    Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer

---

[6] *Reregistration Eligibility Decision (RED) Methylisothiasolinene*, EPA (1998), *available at* https://archive.epa.gov/pesticides/reregistration/web/pdf/3092.pdf

[7] Mary Ann Liebert, Inc., *Final Report on the Safety Assessment of Methylisothiazolinone and Methylchloroisothiazolinone*, 11 J. of the Am. Coll. Of Toxicology 75, 79 (1992), *available at* http://legacy.library.ucsf.edu/documentStore/p/h/r/phr77d00/Sphr77d00.pdf

[8] Nat'l Prods. Ass'n, NPA Standard and Certification for Personal Care Products (2010), *available at* http://www.npainfo.org/App_Themes/NPA/docs/naturalseal/The%20Natural%20Sandard%20041112%20final.pdf.

[9] Method for preparing an alpha-alkylcinnamaldehyde, U.S. Patent Application No. EP 19960202990 (filed Oct. 28, 1996), *available at* https://www.google.com/patents/EP0771780A1?cl=en.

[10] https://www.google.com/patents/EP0771780A1?cl=en

[11] PubChem, https://pubchem.ncbi.nlm.nih.gov/compound/2345#section=Consumer-Uses.

because the reasonable consumer believes the term "natural," when used to describe a good such as the Product, means that it is free of synthetic ingredients.

21.    A reasonable consumer's understanding of the term "Natural Elements" comports with that of federal regulators and common meaning. That is, the reasonable consumer understands the representation that a product contains "Natural Elements" to mean that it does not contain any synthetic or artificial ingredients.

22.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains "Natural Elements," especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredient's labels.

23.    Discovering that the ingredients do not contain "Natural Elements" and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though Sodium Polyacrylate, Disodium Distyrylbiphenyl Disulfonate, Methylisothiazolinone, Lilial, Benzyl Benzoate, and Hexylcinnamaldehyde are identified on the back of the Products' packaging in the ingredients' listed, the reasonable consumer would not understand – nor is she expected to understand – that these ingredients are synthetic.

24.    Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-product claims, representations, and warranties that the Products contain "Natural Elements."

25.    Defendant did not disclose that Sodium Polyacrylate, Disodium Distyrylbiphenyl Disulfonate, Methylisothiazolinone, Lilial, Benzyl Benzoate, and Hexylcinnamaldehyde are

synthetic ingredients. A reasonable consumer understands Defendant's "Natural Elements" claims to mean that the Products do not contain synthetic ingredients.

26.     The aforementioned material misrepresentations that the Products contain "Natural Elements" induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products. Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented to contain "Natural Elements." If not for Defendant's misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of Defendant's misrepresentations.

## CLASS ALLEGATIONS

27.     Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

28.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

29.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

30.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the "Class."

31.     The Class is properly brought and should be maintained as a class action under Rule 23(b), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

32.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

33.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.     Whether the Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that the Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

    c.     Whether the Defendant made false or misleading statements to the Class and the public concerning the content and safety of its Products.

    d.     Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

    e.     Whether Plaintiff and the Class are entitled to injunctive relief;

    f.     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

34.    <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

35.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. The Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

36.    The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

37.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its "Natural Elements" Product.

38.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

39.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, the Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Products. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if the ingredients were changed so that they truly contained "Natural Elements" as is represented by Defendant.

40.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.      Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Products have been purchased by thousands of people throughout the United States.

b.      Commonality: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers.

Thus, all members of the Class have a common cause against the Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i.    Resolution of the issues presented in the Rule 23 class;

    ii.    Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

    iii.    Whether, on equitable grounds, the Defendant should be prevented from continuing to deceptively mislabel their Products as containing "Natural Elements."

c.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. Her consumer protection claims are

common to all members of the injunctive Class and she has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

41.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Product using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Products.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

42.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

43.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

44.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

45.     There is no adequate remedy at law.

46.     Defendant misleadingly, inaccurately, and deceptively presents its Products to consumers.

47.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product as containing "Natural Elements" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.

48.     Defendant made its untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

49.     Plaintiff and New York Subclass Members have been injured inasmuch as they paid a premium for Products that - contrary to Defendant's representations— did not contain

"Natural Elements." Accordingly, Plaintiff and New York Subclass Members received less than what they bargained or paid for.

50.     Defendant's advertising and products' packaging and labeling induced the Plaintiff and New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

51.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

52.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

53.     Plaintiff and Class Members seek actual damages under GBL § 349, and expressly waive any right to recover minimum, punitive, treble and statutory damages pursuant to GBL § 349.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and New York Subclass Members)

54.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

55.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

56.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

57.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products contain "Natural Elements."

58.     Plaintiff and New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which—contrary to Defendant's representations—do not contain "Natural Elements." Accordingly, Plaintiff and New York Subclass Members received less than what they bargained or paid for.

59.     Defendant's advertising, packaging and product labeling induced the Plaintiff and Class Members to buy Defendant's Products.

60.     Defendant made its untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

61.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

62.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

63.     Defendant's material misrepresentation was substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

64.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and All Class Members)**

65.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

67.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.      **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.      **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.     **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.     **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*, and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e.     **Colorado**: Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.     **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.     **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.     **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.     **Florida:** Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.     **Hawaii:** Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.  **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.  **Illinois:** Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.  **Indiana:** Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.  **Kansas:** Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.  **Kentucky:** Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.  **Maine:** Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q.  **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.  **Massachusetts:** Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.  **Michigan:** Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.   **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.   **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:** Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq*.

y.   **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.   **North Carolina:** Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

bb.     **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc.     **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd.     **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee.     **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff.     **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg.     **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh.     **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii.     **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj.   **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk.   **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll.   **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm.   **West Virginia:** Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

nn.   **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo.   **Wyoming:** Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

68.   Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products contain "Natural Elements."

69.   Contrary to Defendant's representations, the Products do not contain "Natural Elements."

70.   Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

71.   Defendant made its untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

72.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

73.     As a result of Defendant's violations, Defendant has been unjustly enriched.

74.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

75.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products contain "Natural Elements."

77.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

78.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

79.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

80.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which they refused to do.

81.     Defendant breached the express warranty because the Products do not contain "Natural Elements."

82.     Defendant thereby breached the following state warranty laws:

a.     Code of Ala. § 7-2-313;

b.     Alaska Stat. § 45.02.313;

c.     A.R.S. § 47-2313;

d.     A.C.A. § 4-2-313;

e.     Cal. Comm. Code § 2313;

f.     Colo. Rev. Stat. § 4-2-313;

g.     Conn. Gen. Stat. § 42a-2-313;

h.     6 Del. C. § 2-313;

i.     D.C. Code § 28:2-313;

j.     Fla. Stat. § 672.313;

k.     O.C.G.A. § 11-2-313;

l.     H.R.S. § 490:2-313;

m.     Idaho Code § 28-2-313;

n.     810 I.L.C.S. 5/2-313;

o.     Ind. Code § 26-1-2-313;

p.     Iowa Code § 554.2313;

q.     K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

83.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

<u>FIFTH CAUSE OF ACTION</u>
<u>BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY</u>
**(On Behalf of Plaintiff and All Class Members)**

84.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85.     Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiff and Class Members that the Products contain "Natural Elements."

86.     Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the label and product description, and reasonable consumers

expecting a product that conforms to its label would not accept the Defendant's Products if they knew that it actually contained synthetic ingredients and did not contain "Natural Elements."

87.     Within a reasonable amount of time after the Plaintiff discovered that the Products contain synthetic ingredients, Plaintiff notified the Defendant of such breach.

88.     The inability of the Defendant's Products to meet the label descriptions was wholly due to the Defendant's fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

89.     As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

<u>**SEVENTH CAUSE OF ACTION**</u>
<u>**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**</u>
**(On Behalf of Plaintiff and All Class Members)**

90.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     Defendant knew or had reason to know that the Plaintiff and other Class Members were buying its Products with the specific purpose of buying products that contained exclusively natural ingredients.

92.     Plaintiff and the other Class Members, intending to use wholly natural products, relied on the Defendant in selecting its Products to fit its specific intended uses.

93.     Defendant held itself out as having particular knowledge of the Defendant's Products' ingredients.

94.     Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Products to fit its particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Products' ingredients.

95.     Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular uses was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

96.     As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: May 19, 2017                                **REESE LLP**

                                    By:    */s/ Michael R. Reese*
                                           Michael R. Reese
                                           *mreese@reesellp.com*
                                           100 West 93rd Street, 16th Floor
                                           New York, New York 10025
                                           Telephone: (212) 643-0500
                                           Facsimile: (212) 253-4272

                                           **THE SULTZER LAW GROUP, P.C.**
                                           Jason P. Sultzer, Esq.
                                           *sultzerj@thesultzerlawgroup.com*
                                           85 Civic Center Plaza, Suite 104
                                           Poughkeepsie, New York 12601
                                           Tel: (845) 483-7100
                                           Fax: (888) 749-7747

                                           **HALUNEN LAW**
                                           Melissa Wolchansky (to be admitted *pro hac vice*)
                                           *Wolchansky@halunenlaw.com*
                                           Amy Boyle (to be admitted *pro hac vice*)
                                           *boyle@halunenlaw.com*
                                           1650 IDS Center
                                           80 S 8th Street
                                           Minneapolis, MN 55402
                                           Telephone: 612.605.4098
                                           Facsimile: 612.605.4099

                                           *Counsel for Plaintiff and the Class*