**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TONY LUIB, individually on behalf of himself and all others similarly situated, | : | Case No.: 1:17-cv-03021-BMC |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| HENKEL CONSUMER GOODS INC. | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF <u>NOTICE PLAN</u>**

**TABLE OF CONTENTS**

Table of Contents…………………………………………………………………..i-iii

Table of Authorities………………………………………………………………..iv-vii

I.    INTRODUCTION……………………………………………………………..1

II.   PROCEDURAL BACKGROUND………………………..………………………1

III.  THE TERMS OF THE PROPOSED SETTLEMENT…..………………………………4

   A. Certification of the Settlement Class……..…...……………………………..…5

   B. Relief for the Members of the Settlement Class…………………………………5

     1. Monetary Relief…………………………………………………....5

     2. Injunctive Relief…………………………………………………...7

   C. Incentive Awards and Attorneys' Fees and Expenses……………..……………8

   D. Settlement Notice……………………………………………...……..8

   E. Processing of Claims And Method Of Distributing Relief…………………………11

IV.  ARGUMENT……………………………………………………………....11

   A. The Court Should Preliminarily Approve the Settlement Agreement..…………11

   B. Legal Standard………………………………………………………...12

   C. The Proposed Settlement Meets the Requirements of Rule 23(e)(2)..………..…13

     1. The Class Representative and Class Counsel Have Adequately Represented the Class…………………………………………13

     2. The Settlement was Negotiated at Arm's Length…………………………..15

     3. The Substantial Monetary and Injunctive Relief Provided for the Settlement Class is Adequate………………………………………....15

       a. The costs, risks, and delay of trial and appeal weigh in favor of preliminary approval……………………………………17

i

      b.   The effectiveness of any proposed method of distributing relief to the Settlement Class and processing class-member claims weights in favor of preliminary approval…………………20

      c.   The terms of the proposed award of attorney's fees weigh in favor of preliminary approval…………………………………20

      d.   Agreements required to be identified under Rule 23(e)(3)….…..…21

    4.  The Settlement Treats Class Members Equitably Relative to Each Other………………………………………………………..…21

D.  The Proposed Settlement Is Procedurally and Substantially Fair Under Second Circuit Jurisprudence…………………………………………………22

    1.  Procedural Fairness……………………………………………………...23

    2.  Substantive Fairness…………………………………………………...23

      a.   The complexity, expense, and likely duration of litigation……….24

      b.   The reaction of the class to the settlement…………………..…24

      c.   The stage of the proceedings and the amount of discovery completed……………………………………………………...24

      d.   The risks of establishing liability and damages…………..……25

      e.   The risk of maintaining class action status through trial………..25

      f.   The ability of Defendant to withstand a greater judgment………..25

      g.   The range of reasonableness of the Settlement in light of the best possible recovery and in light of all the attendant risks of litigation………………………………………………....26

E.  The Court Should Preliminarily Certify the Settlement Class………………...26

    1.  The Settlement Class Meets Each Prerequisite of Rule 23(a)…………..26

      a.   Numerosity…………………………………………………27

      b.   Commonality…………………………………………………27

      c.   Typicality…………………………………………………....28

d.  Adequacy of representation……………………………..…………..28

e.  Ascertainability……………………………………………………..29

2.  The Settlement Class Meets the Requirements of Rule 23(b)(3)…………30

a.  Common legal and factual questions predominate in this
action…………………………………………………………………30

b.  A class action is the superior means to adjudicate
Plaintiff's claims…………………………………………….…..31

F.  The Court Should Approve the Proposed Notice Plan…………………….…..32

V.   CONCLUSION………………………………………………………………...…..34

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 DLI RML, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 18,
   2013) ...............................................................................................................................19

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................30

*Asare v. Change Grp. N.Y., Inc.*,
   2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. Nov. 15, 2013)...............................................25

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*,
   No. 13-CV-150 JPO, 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30,
   2015) ...............................................................................................................................19

*Babcock v. C. Tech Collections, Inc.*,
   No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548 (E.D.N.Y. Mar. 27,
   2017) ...............................................................................................................................19

*Banyai v. Mazur*,
   No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007).........................17

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .....................................................................................21

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006)......................................................................................24

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013)..........................................................................................12, 23, 28

*In re Citigroup Inc. Sec. Litig.*,
   199 F. Supp. 3d 845 (S.D.N.Y. 2016)................................................................................7

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)..............................................................................26

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..............................................................................................22

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..............................................................................23, 24, 25, 26

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............................................................18

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist. LEXIS 24512 (E.D.N.Y. Feb.
  17, 2017) ..........................................................................................................15

*Fogarazzo v. Lehman Bros.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................28

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ..........................................................................................19

*Hall v. Prosource Techs., LLC*,
  No. 14-CV-2502, 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11, 2016) .........22

*Handschu v. Special Services Div.*,
  787 F.2d 828 (2d Cir. 1986).............................................................................32

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .........................................................................32

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010)............20

*Long v. HSBC USA Inc.*,
  2015 U.S. Dist. LEXIS 122655 (S.D.N.Y. Sep. 11, 2015)....................................19

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................. 20-21

*Manley v. Midan Rest. Inc.*,
  14 Civ. 1693, 2016 U.S. Dist. LEXIS 43571 (S.D.N.Y. Mar. 30, 2016) ..................13, 18, 24

*Mantikas v. Kellogg Co.*,
  No. 17-2011, 2018 U.S. App. LEXIS 34756 (2d Cir. Dec. 11, 2018)....................27

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)........................................................................27, 28

*Mayhew v. KAS Direct, LLC*,
  7:16-cv-06981-VB (S.D.N.Y.)................................................................14, 20, 31

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)........................................................................12, 15, 23

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)..............................................................17, 18, 31

*Morangelli v. Roto-Rooter Servs. Co.*,
   No. 1:10-CV-00876 (BMC), 2014 U.S. Dist. LEXIS 7414 (E.D.N.Y. Jan. 6,
   2014) ................................................................................................................16, 25

*In re Nassau County Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) ..........................................................................30, 31

*In re Nissan Radiator/Transmission Cooler Litig.*,
   No. 10-CV-7493, 2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) .......28

*Parker v. City of N.Y.*,
   No. 15 CV 6733 (CLP), 2017 U.S. Dist. LEXIS 203579 (E.D.N.Y. Dec. 11,
   2017) ................................................................................................................23, 24

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................................................................24

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017)....................................................................................29

*Price v. L'Oreal USA, Inc.*,
   2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018)....................................29

*Puglisi v. TD Bank, N.A.*,
   No. 13 Civ. 637 (GRB), 2015 U.S. Dist. LEXIS 100668 (E.D.N.Y. July 30,
   2015) ........................................................................................................................20

*Rapoport-Hecht v. Seventh Generation, Inc.*,
   No. 14-CV-9087 (KMK), 2017 U.S. Dist. LEXIS 219060 (S.D.N.Y. Apr. 28,
   2017) ........................................................................................................................20

*Rapoport-Hecht v. Seventh Generation, Inc.*,
   No. 7:14-cv-09087-KMK (S.D.N.Y.) .....................................................................14

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)....................................................................................28

*In re Sinus Buster Prods. Consumer Litig.*,
   No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415 (E.D.N.Y. Nov. 10, 2014).......25

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015)......................................................................................27

*Tart v. Lions Gate Entm't Corp.*,
   No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) .......30, 32

*In re Tracfone Unlimited Serv. Plan Litig.*,
   112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................................17

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ..........................................................................33

*Vincent v. People Against Dirty, PBC.*,
    Case No. 7:16-cv-06936 (S.D.N.Y.) ...........................................................14, 31

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).......................................................................................27

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................... *passim*

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011)........................17

*Zeltser v. Merrill Lynch & Co.*,
    No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sep. 23, 2014) ...........17, 31, 32

**Statutes**

Federal Rules of Civil Procedure Rule 23 ........................................................... *passim*

New York General Business Law Section 349.....................................................................1

New York General Business Law Section 350........................................................... 1-2

Plaintiff Tony Luib ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.[1]

## I.   INTRODUCTION

This proposed class action settlement ("Settlement") would resolve the claims of purchasers of Defendant Henkel Consumer Goods Inc.'s ("Defendant," and together with Plaintiff, the "Parties") Purex "Natural Elements" brand laundry detergent products (the "Products"), who made their purchases between May 19, 2013, through the date of the Court's Preliminary Approval Order.  Plaintiff alleges that Defendant misled him and other consumers by labeling the Products "Natural Elements" when they in fact include synthetic ingredients.

To settle the case, Defendant will pay $1,500,000.00 into a Settlement Fund and make certain changes to its labeling of the Products.

## II.   PROCEDURAL BACKGROUND

On May 19, 2017, Plaintiff filed a complaint on behalf of himself and a proposed class against Defendant (the "Complaint") challenging the "Natural Elements" representation on the labeling, marketing, and advertising of Defendant's Products because the Products contain synthetic ingredients.  *See* ECF No. 1 at ¶¶ 1-2.  Plaintiff alleged the following causes of action: (1) violation of New York General Business Law ("GBL") Section 349; (2) violation of GBL

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Class Settlement Agreement ("Settlement Agreement").  References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Michael R. Reese in Support of Plaintiff's Motion for Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan (the "Reese Decl.").

Section 350; (3) violation of the consumer protection laws of 41 other states; (4) breach of express warranty in violation of the laws of all 50 states; (5) breach of implied warranty of merchantability; and (6) breach of implied warranty of fitness for a particular purpose.

Prior to filing the Complaint, Class Counsel[2] conducted a thorough investigation of the potential claims, ingredients, and the regulatory framework surrounding the Products at issue. *See* Reese Decl. ¶ 6.

On August 18, 2017, Defendant filed a letter requesting a pre-motion conference with the Court regarding its planned motion to dismiss the Complaint. *See* ECF No. 22. By minute order entered August 18, 2017, the Court deemed Defendant's letter to be its motion to dismiss. On August 29, 2017, Plaintiff filed his letter opposing the motion. *See* ECF No. 23. On September 7, 2017, Defendant filed a letter informing the Court of relevant case law issued after its motion to dismiss was filed. *See* ECF No. 24. At a hearing held on September 13, 2017, the Court *sua sponte* converted Defendant's motion to one for summary judgment and offered Defendant the opportunity to submit factual evidence regarding the composition of the Products to demonstrate the basis for the "Natural Elements" claim. The Court also permitted Plaintiff to request summary judgment in his favor in his opposition to Defendant's motion. *See* Minute Entry and Order entered September 14, 2017. On October 11, 2017, Defendant filed its Converted Motion for Summary Judgment. *See* ECF No. 27. On November 30, 2017, Plaintiff filed his opposition to the Converted Motion for Summary Judgment and requested summary judgment in his favor. *See* ECF No. 37. Defendant filed its Reply in Support of the Converted Motion for Summary Judgment on January 8, 2018.

---

[2] The Settlement Agreement defines "Class Counsel" as the law firms Reese LLP, Halunen Law, and the Sultzer Law Group, P.C. § 2.9.

2

On February 5, 2018, the Court denied summary judgment for both Parties, finding that the question of whether a reasonable person would be misled by the Products' "Natural Elements" claim depended on genuine issues of material fact that would have to be resolved by a jury. *See* ECF No. 40 (the "Summary Judgment Order"). On March 16, 2018, Defendant answered the Complaint. *See* ECF No. 43.

On June 13, 2018, the Parties participated in a full day mediation before the Honorable Stephen M. Orlofsky (Ret.). *See* Reese Decl., ¶ 10. The mediation did not lead to a settlement. *See id*. The Parties continued to engage in substantial discovery, including serving and responding to requests for documents, interrogatories, and requests for admission. *See id.*, ¶ 11. Defendant produced more than 43,000 pages of documents in response to Plaintiff's discovery requests. *See id*.

As discovery progressed, the Parties continued to negotiate a potential settlement, informed by facts exchanged in discovery. *See id.*, ¶ 12. On December 18, 2018, Class Counsel and Defendant's Counsel negotiated a term sheet setting out the basic outline of a settlement agreement providing for both monetary and injunctive relief for Plaintiff and the putative class, and a broad release for Defendant. *See id*. Thereafter, the Parties began drafting and negotiating the precise terms of the Settlement Agreement. *See id*. These negotiations were lengthy, detailed, arm's-length, and covered all aspects of the settlement. *See id.*. After more than six months of hard-fought negotiations, the Parties finally resolved all outstanding issues and executed the Settlement Agreement on February 28, 2019. *See id*.

Before entering into this Settlement Agreement, Class Counsel conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims, potential claims, and potential defenses asserted in this Action. *See*

*id.*, ¶ 13.  As part of that investigation, Class Counsel obtained documents and other information from Defendant through confidential, informal, and formal discovery, including information concerning marketing, label design, product formulation, sales, pricing, profit-and-loss information for the Products, information regarding Defendant's sales to grocery stores and other retailers, and regulatory submissions.  *See id*.  Defendant has denied, and continues to deny, that the marketing, advertising, and/or labeling of the Products at issue are in any way false, deceptive, or misleading to consumers, breached any warranty, or otherwise violate any legal requirement.  *See* § 1.14.

Plaintiff respectfully asks the Court to (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the Settlement Class for purposes of settlement only; (3) approve the proposed Notice Plan; (4) appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator and direct it to commence the Notice Plan; and (5) schedule a Fairness Hearing to consider final approval of the Settlement.  *See* Fed. R. Civ. P. 23(e).  Plaintiff further respectfully seeks to be appointed as Class Representative for the Settlement Class and for his counsel to be appointed as Class Counsel to the Settlement Class.  *See* Fed. R. Civ. P. 23(g).

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed-upon Settlement relief, and proposes a Notice Plan for disseminating notice to the Settlement Class Members.  Plaintiff's objectives in filing the Action were to remedy the allegedly deceptive representations in Defendant's marketing and labeling of the Products, and to compensate Settlement Class Members purportedly damaged by the alleged misrepresentations.  Through the Action and the Settlement Agreement, Plaintiff has achieved both objectives.

### A.     Certification of the Settlement Class

Plaintiff seeks certification of a nationwide Settlement Class of all persons and entities that, during the Class Period, both resided in the United States (including both states and territories of the United States) and purchased any of the Products at issue in the United States.[3]  The Class Period means the period from May 19, 2013, up to and including the date of the Court's Preliminary Approval Order.  Excluded from the Settlement Class are: (1) Defendant's officers, directors, employees and attorneys; (2) governmental entities; (3) the Court, the Court's immediate family, and the Court staff; and (4) any person who timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

### B.     Relief for the Members of the Settlement Class

The Settlement Agreement provides for significant monetary and injunctive relief.

### 1.     Monetary Relief

The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $1,500,000 to pay for (1) cash payments to be distributed to Settlement Class Members who submit timely, valid, and approved Claims; (2) all costs and expenses incurred by the Settlement Administrator in disseminating notice to the Settlement Class and administering the Settlement, including processing the claims of the Settlement Class; (3) any Attorneys' Fees and Expenses award granted by the Court to Class Counsel; (4) any Incentive Award granted by the Court to Plaintiff; and (5) any necessary taxes and tax expenses.  *See* § 4.1.

In order to receive a cash payment, Settlement Class Members must submit a timely and valid Claim Form, which must contain the Settlement Class Member's name and mailing address, attestation of purchase(s), container size(s) and number of Products purchased, approximate

---

[3] The Products at issue are described in Section 2.25 of the Settlement Agreement.

date(s) of purchase(s), and location(s) of purchase(s). *See* § 4.2(c). Claim Forms that do not meet the requirements set forth in the Settlement Agreement and in the Claim Form instructions may be rejected, with the Settlement Administrator's determining a Claim Form's validity. *See id*.

The amount of each Settlement Class Member's cash recovery per Product(s) will depend on the container size of the Product(s) purchased and whether the Settlement Class Member submits valid Proof of Purchase. *See* § 4.3. Claimants who submit Proof of Purchase may seek reimbursement for an unlimited number of qualifying purchases of the Products. Claimants may seek reimbursement for up to 10 qualifying purchases of the Products without Proof of Purchase. All Claimants will be paid $2.00 per purchase of a Product with a container size of less than 150 ounces, and $4.00 per purchase of a Product with a container size of 150 or more ounces. *See* § 4.3(b).

If any monies remain in the Settlement Fund after the payment of all valid Claims, Notice and Administration costs, Attorneys' Fees and Expenses, an Incentive Award, and any other claims, costs, or fees specified by the Settlement Agreement, those Residual Funds will be used to make additional payments to eligible Settlement Class Members. Pursuant to the payment priority provisions of the Settlement Agreement, Claimants could receive up to a total of $6.00 for each qualifying purchase of a Product in a container smaller than 150 ounces, and up to a total of $12.00 for each qualifying purchase of a Product in a container of 150 ounces or more. *See* § 4.5(a). These amounts correspond to a substantial percentage of the average retail price of these Products. *See* Reese Decl., ¶ 15.

If there are still excess Residual Funds following the above process, including any checks that were not cashed, then the Settlement Administrator shall distribute the Residual Funds to Consumers Reports. *See* § 4.5(c). Consumer Reports is an independent, nonprofit member

organization that works side by side with consumers for truth, transparency, and fairness in the marketplace. *See* Reese Decl., Ex. 5 (Declaration of David Friedman in Support of Plaintiff's Motion for Preliminary Review of Class Action Settlement**)**. Consumer Reports' mission includes working to create "a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves." *Id.* at ¶ 2. Accordingly, Consumer Reports meets the requirement that a *cy pres* recipient "reasonably approximate[s] the interests of the class." *In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 852 (S.D.N.Y. 2016).

The Residual Funds will not be returned to Defendant, and Defendant represents and warrants that any payment of Residual Funds to any charities, non-profit organizations, or government entities shall not reduce any of its donations or contributions to any entity, charity, charitable foundation or trust, and/or non-profit organization. *See* § 4.5(c).

### 2.    Injunctive Relief

The Settlement Agreement also requires Defendant to make significant modifications to its labeling of the Products and its website. *See* § 4.6. Specifically, Defendant will:

- Add the following language to the front labels of the Products to qualify the meaning of "Natural Elements": "contains naturally derived and other ingredients;"

- Add "USDA Certified Bio-Based" to the front label of the Products with the certified percentage of the overall ingredients that meets the bio-based standard;

- Within twelve months of the Effective Date (the "Label Change Date"), Defendant will cease manufacturing Products that bear "Natural Elements" or other variations of the term "natural" on the labels unless they conform to these modifications; and

- Within twelve months of the Effective Date, Defendant will modify the content of its website, www.purex.com, to correspond to these labeling changes.

*See id*. Defendant is not required to change or replace the labels on any Products that were labeled prior to the Label Change Date. *See id.* Defendant is also not required at any time to (i) destroy any existing Products or components of such Products, or (ii) remove any existing Products from the marketplace. *See* § 4.7(c).

## C.    Incentive Awards and Attorneys' Fees and Expenses

The Settlement Agreement provides that Plaintiff will petition the Court for an Incentive Award of $7,500 from the Settlement Fund to compensate him for the actions he took in representing the Settlement Class.  *See* § 8.4.  Plaintiff will receive any Incentive Award ordered by the Court to be paid from the Qualified Settlement Fund within seven (7) days after the Effective Date.  *See id*.  Defendant has also agreed not to oppose an application for payment of Attorneys' Fees to Class Counsel in an amount of up to 33% of the Settlement Fund ($500,000), for Class Counsel's work on the Action.  *See* § 8.1.  Class Counsel shall also be allowed to make an application of Expenses, separate and apart from the 33% Class Counsel will seek in fees, to be paid from the Settlement Fund.  *See id*.  The Attorneys' Fees and Expenses to be determined by the Court shall be paid to Class Counsel from the Qualified Settlement Fund and shall be the sole aggregate compensation paid by Defendant for Class Counsel representing the Class.

## D.    Settlement Notice

Pursuant to the Settlement Agreement, the Parties request that the Court appoint Epiq as the Settlement Administrator to administer the Notice Plan[4] and the claims process.  *See* § 2.8. The Parties selected Epiq based on its excellent work and breadth of experience administering other similar consumer class actions.  *See* Reese Decl., ¶ 18; Azari Decl., ¶¶ 3-6.

The Notice Plan provides that the Settlement Administrator will use a Long-Form Notice and a Summary Class Notice to disseminate notice of the Settlement Agreement to the Settlement Class Members through a variety of means discussed *infra*.  *See* § 5.1(a); Settlement Agreement, Exs. B, D.  The Long-Form Notice is designed to provide notice of the full terms of the Settlement

---

[4] The details of the Notice Plan are set forth in the Declaration of Cameron Azari ("Azari Decl."), a Principal at Epiq, attached as Exhibit C to the Settlement Agreement.

8

Agreement.  It provides, among other things,

- A description of the claims, issues, and defenses in the Action;

- Information for a consumer to determine if he or she is a member of the proposed Settlement Class;

- A description of the proposed Settlement and the relief offered;

- The options available to Settlement Class Members, *i.e.* submitting a Claim Form, opting out of the Settlement, objecting to the Settlement and/or appearing at the Fairness Hearing through an attorney or otherwise, or doing nothing;

- A description of the claims against the Defendant that will be released by the Settlement;

- The time and date of the Final Approval Hearing; and

- The binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3).

*See* Settlement Agreement, Ex. B.

The Parties developed a robust Notice Plan with the assistance of Epiq that includes: (1) a sophisticated and comprehensive web-based notice using paid banner ads on websites targeted based on Defendant's consumers' demographics; (2) individual notice sent by email and direct mail to customers for whom Defendant has contact information; (3) a dedicated Settlement Website through which Settlement Class Members can obtain more detailed information about the Settlement and access case documents; (4) a press release regarding the Settlement sent to approximately 5,000 general media (print and broadcast) outlets across the United States and 5,400 online databases and websites; and (5) a toll-free telephone helpline through which Settlement Class Members can obtain additional information about the Settlement and request the class notice and/or a Claim Form.  *See* Azari Decl.

Epiq estimates that the Notice Plan will reach at least 70% of the proposed class with an average frequency of three times each. *See* Azari Decl., ¶ 28. Epiq developed the Plan by targeting adults 18 years old and older in the U.S. who have purchased environmentally-friendly household cleaners or identified an interest in Purex and "Natural" products. *See id.,* ¶¶ 17-18.

The internet banner portion of the notice campaign will place banner ads for approximately four weeks on both desktop and mobile devices. *See id.,* ¶¶ 16, 19. The banner notice is designed to generate approximately 402,750,000 impressions. *See id.*, ¶ 18.

Once directed to the Settlement Website, the class member will be able to submit their Claim Form online, making claim submission as simple as possible. The Settlement Website will post Settlement-related and case-related documents such as the Settlement Agreement, the Summary Notice, the Long-Form Notice, and the Preliminary Approval Order. *See* § 2.34; Azari Decl., ¶ 23. Settlement Class Members will have the opportunity to file a claim on the case website. *See* § 2.34; Azari Decl., ¶ 23. The Settlement Website will be activated by the date of the first publication of the Summary Settlement Notice or Class Notice, whichever is earlier, and shall remain active until 120 calendar days after the Effective Date. *See* § 2.34.

Epiq will provide a toll-free hotline devoted to the Action to allow Settlement Class Members to call for additional information, listen to answers to FAQs and request that a Notice be mailed to them. *See* Azari Decl., ¶ 24. The toll-free telephone number will be prominently displayed in the Notice documents as well. *See id.* Finally, Epiq will establish and maintain a post office box for correspondence about the Settlement, allowing Settlement Class Members to contact the Settlement Administrator by mail with any specific requests or questions, including requests for exclusion. *See id.*, ¶ 25.

### E.    Processing of Claims and Method of Distributing Relief

Epiq has set forth the details of its method for processing claims and distributing relief in the Azari Declaration. *See id.*, ¶ 26. Once all valid Claims have been tallied, Epiq will cause all electronic and hard copy Claims to be processed, reviewed, and de-duplicated prior to preparing the finalized Distribution List. *See id.* Once the finalized Distribution List has been prepared, Epiq will issue traditional bank checks to Claimants at the addresses that the Claimants provided during the claims process. *See id.* And in an effort to ensure that the checks will reach the intended Claimant, any checks returned as undeliverable by the USPS which have a forwarding address will be re-mailed to that forwarding address, and any checks that are returned as undeliverable by the USPS without a forwarding address will be subject to address verification searches ("skip tracing"), utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc. to locate updated addresses. *See id.* Checks will then be re-mailed to updated addresses located through skip tracing. *See id.*

## IV.    ARGUMENT

### A.    The Court Should Preliminarily Approve the Settlement Agreement

Class Counsel have worked steadfastly to reach a fair, reasonable, and adequate Settlement. Plaintiff and his counsel believe his claims are strong and are optimistic about obtaining class certification and succeeding on the merits. *See* Reese Decl., ¶ 20. However, significant expense and risk attend the continued prosecution of the claims through trial and any appeals. *See id.* In negotiating and evaluating the Settlement, Plaintiff and Class Counsel have taken these costs and uncertainties into account, as well as the risks and delays inherent in complex class action litigation. *See id.* Additionally, in the process of investigating and litigating the Action, Class Counsel conducted significant research on the consumer protection statutes at issue,

as well as the overall legal landscape, to determine the likelihood of success and reasonable parameters under which courts have approved settlements in comparable cases. *See id.* In light of the foregoing, Class Counsel believe the present Settlement provides significant relief to Settlement Class Members and is fair, reasonable, adequate, and in the best interests of the Settlement Class. *See id.*

**B.      Legal Standard**

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, as amended in December 2018, a court may approve a class action settlement "only on finding that [the settlement agreement] is fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.*

The Second Circuit has also articulated its own "fair, reasonable, and adequate" standard, discussed *infra*, that effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). This Circuit has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009). "The

compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ("*Visa*")).  A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Visa* at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)).

"Preliminary approval is the first step in the settlement of a class action whereby the court must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement."  *Manley v. Midan Rest. Inc.*, 14 Civ. 1693, 2016 U.S. Dist. LEXIS 43571, at *21 (S.D.N.Y. Mar. 30, 2016) (internal quotations omitted).

C.   **The Proposed Settlement Meets the Requirements of Rule 23(e)(2)**

Recent amendments to Rule 23(e)(2) set forth specific criteria that the Court must consider in determining whether a proposed settlement is fair, reasonable and adequate.  The proposed Settlement here satisfies each of the Rule's requirements.

1.   **The Class Representative and Class Counsel Have Adequately Represented the Class**

Plaintiff and Class Counsel have more than adequately represented the interest of the Settlement Class in this case.  Plaintiff was extensively involved in litigating this action, including by reviewing the Complaint and other case documents, communicating extensively with Class Counsel regarding the status of the case, providing responses to discovery, and submitting evidence during the summary judgment phase of the action.  *See* Reese Decl., ¶ 23.  Plaintiff fulfilled his responsibility of advancing and protecting the interests of the Class and evaluating the proposed Settlement to determine that it is in the best interests of the Settlement Class.

Class Counsel has also more than adequately represented the Settlement Class.  As detailed herein, Class Counsel performed an extensive investigation into the claims at issue, participated in a mediation with the Honorable Stephen M. Orlofsky, conducted extensive discovery, successfully litigated the case through summary judgment, and conducted vigorous settlement negotiations for more than six months.  Class Counsel have relied on their significant experience in litigating and resolving class actions, including consumer class actions relating to "natural" products,[5] in order to reach a Settlement that Class Counsel believes is an excellent result for the Settlement Class.

This determination was based in part upon information Defendant provided to Plaintiff as part of settlement negotiations—in particular, information concerning the pricing of the Products, the pricing of Purex brand laundry detergent products that do not include the "Natural Elements" label ("Base Purex"), and market study information concerning the purchasing habits and decisions of consumers who purchase the Products.

This Settlement is comparable to other, similar settlements that have been litigated by Class Counsel and approved by courts in this Circuit, including *Rapoport-Hecht v. Seventh Generation, Inc.*, No. 7:14-cv-09087-KMK (S.D.N.Y.) (consumer fraud class action involving products mispresented as natural resulting in settlement fund and changes to product marketing); *Mayhew v. KAS Direct, LLC*, 7:16-cv-06981-VB (S.D.N.Y.) (consumer fraud class action involving "natural" misrepresentations resulting in settlement fund, and changes to product marketing); *Vincent v. People Against Dirty, PBC.*, Case No. 7:16-cv-06936 (S.D.N.Y.) (consumer fraud class action involving "natural" misrepresentations resulting in settlement fund and changes to product marketing).  For these reasons, Plaintiff and Class Counsel have adequately represented the Settlement Class.

---

[5] *See* Reese Decl., Exs. 2-4.

### 2.     The Settlement was Negotiated at Arm's Length

There is a "presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement is reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds*, 588 F.3d at 803 (quoting *Visa*, 396 F.3d at 116). The Settlement here was negotiated at arm's length over six months, spanning numerous phone calls, correspondence, and an in-person, full-day mediation with a former Federal judge. *See* Reese Decl., ¶ 12; *see also Elkind v. Revlon Consumer Prods. Corp.*, No. CV 14-2484, 2017 U.S. Dist. LEXIS 24512, at *48 (E.D.N.Y. Feb. 17, 2017) ("participation by a neutral third party supports a finding that the agreement is non-collusive."). Plaintiff also sought and obtained through discovery extensive information regarding the scope of the Class Members' alleged claims and damages. *See* Reese Decl., ¶ 11. Finally, the overarching terms of the Settlement were resolved prior to the discussion of any attorneys' fees, *see id.*, ¶ 14, and the Settlement ultimately provides that Class Counsel may apply for an award of attorneys' fees and expenses not exceeding one-third of the Settlement Fund. *See* § 8.1.

### 3.     The Substantial Monetary and Injunctive Relief Provided for the Settlement Class is Adequate

The Settlement provides significant and adequate relief for members of the Settlement Class. The Committee Notes on Rules—2018 Amendment to Fed. R. Civ. P. 23 ("2018 Committee Notes") state that this requirement, and the requirement under Fed. R. Civ. P. 23(e)(2)(D) that any settlement treats class members equitably relative to each other,

> focus on what might be called a "substantive" review of the terms of the proposed settlement. The relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of any proposed claims process; directing that the parties report back to the court about actual claims experience may be important.

*Id.*  Rule 23(e)(2)(C) identifies the following factors to be considered in assessing whether the class relief is adequate:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

*Id.*  As an initial, overarching consideration, the Settlement provides significant and meaningful monetary and injunctive relief to the Settlement Class.  With respect to monetary relief, Claimants are entitled to refunds of $2.00 per Product with a container size less than 150 ounces, and $4.00 per Product with a container size equal or greater to 150 ounces.  *See* § 4.3(b).  These refund amounts may be increased by as much as triple if there are residual amounts in the Settlement Fund.  *See* §§ 4.3, 4.5.  These represent substantial payments.  Data provided by Henkel for its most common container sizes of the Products shows that the average retail price paid by consumers, excluding any discounts offered by the retailers, is approximately $3.50-4.50 for containers smaller than 150 ounces, and $7.00-8.00 for containers of 150 ounces or larger.  *See* Reese Decl., ¶ 15.  And when a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor."  *Morangelli v. Roto-Rooter Servs. Co.*, No. 1:10-CV-00876 (BMC), 2014 U.S. Dist. LEXIS 7414, at *22 (E.D.N.Y. Jan. 6, 2014) (internal quotation omitted).

The Settlement Class will also benefit from the injunctive relief secured by the Settlement Agreement, including Defendant's modifications to its labeling of the Products and its website.  *See* § 4.6.  The basic allegation of the Complaint is that the "Natural Elements" statement on the

16

labeling, marketing, and advertising of the Products is misleading because the Products include synthetic ingredients. The injunctive relief the Settlement provides will address this by requiring Defendant to (a) add the language "contains naturally derived and other ingredients" to the front label of the Products in order to qualify the meaning of "Natural Elements;" (b) add "USDA Certified Bio-Based" with the certified percentage of the overall ingredients that meet the bio-based standard to the front label of the Products; (c) within 12 months of the Effective Date, cease manufacturing Products that bear "Natural Elements" or other variations of the term "natural" on the labels unless they conform to these modifications; and (d) within 12 months of the Effective Date, modify the content of Defendant's website, www.purex.com, to correspond to these labeling changes. *See id.* These labeling changes and changes to the website will greatly benefit both the Settlement Class Members and future consumers. *See, e.g., In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015) (settlement's change to marketing materials was "significant value for both class members and the general public" because it was "designed to make it clear to customers exactly what" the defendant was selling).

### a. The costs, risks, and delay of trial and appeal weigh in favor of preliminary approval

The relief to the Settlement Class is also more than adequate in light of the costs, risks, uncertainty, and time required to litigate this action through trial and appeal. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 22342, at *30 (S.D.N.Y. Mar. 27, 2007) (citation omitted); *accord Zeltser v. Merrill Lynch & Co.,* No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635, at *14 (S.D.N.Y. Sep. 23, 2014). "The greater the 'complexity, expense and likely duration of the litigation,' the

stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted).  Consumer class action lawsuits by their very nature are complex, expensive, and lengthy.  *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 U.S. Dist. LEXIS 43571, at *9 ("Most class actions are inherently complex [.]").

This Action is no different, where litigating the case to a successful judgment providing classwide relief will require that Plaintiff, *inter alia*, prevail in his motion to certify a class, potentially defend another summary judgment motion, and ultimately obtain a class judgment following trial.  This process, as with any class action litigation, will be fraught with risks at every stage, and at the end of the day, while Plaintiff believes a reasonable consumer would find the term "Natural Elements" on the Products' labeling to be misleading, a jury might not agree.  Indeed, the Court has already ruled that a jury could reasonably conclude either way on the question of whether the "Natural Elements" label was misleading.  *See* Summary Judgment Order, ECF No. 40.  Litigation would also incur immense costs and expenses that ultimately would likely be assessed against any recovery by the Class, and may not result in any tangible recovery for years, especially if any appeal(s) were taken.

An additional challenge is the calculation of classwide damages.  Here, Defendant has argued that no such price premium exists and that that Base Purex is the closest comparable product to the Products.  Defendant has informed Class Counsel that it sells the Products and Base Purex at the same price levels according to container size.  Defendant has also informed Class Counsel that it sells the products to retailers and distributors, and does not sell the Products directly to consumers.  Defendant has provided Class Counsel with information it alleges shows that the Products and Base Purex are sold at retail at roughly the same price.  *See* Reese Decl., ¶ 15.

While Plaintiff does not agree with Defendant's positions and believes that he could ultimately demonstrate a price premium paid for the Products, a proposed settlement eliminates the risk that a class would not be certified on account of these price premium issues.

Further, if Plaintiff were successful in obtaining certification of a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Long v. HSBC USA Inc.*, 2015 U.S. Dist. LEXIS 122655, at *11 (S.D.N.Y. Sep. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed.R.Civ.P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Given the risks, costs, and potential delays inherent in litigating this Action to judgment, this factor weighs heavily in favor of preliminary approval. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548, at *16 (E.D.N.Y. Mar. 27, 2017) (class settlement "eliminates the risk, expense, and delay inherent in the litigation process.") (citations omitted).

The Settlement Agreement's substantial injunctive relief compares favorably to the relief that Plaintiff would seek—but that would not be guaranteed—were the case to proceed to trial and beyond. For example, Plaintiff's ability to achieve a permanent injunction in the litigation context is not assured, as courts within the Second Circuit are split on whether plaintiffs have standing to seek injunctive relief where they are aware of the misrepresentations at issue. *Compare In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 U.S. Dist. LEXIS 133484, at *22 (S.D.N.Y. Sept. 30, 2015); *but see Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 U.S. Dist. LEXIS 184232, at *56 (E.D.N.Y. July 18, 2013).

19

        **b.**      **The effectiveness of any proposed method of distributing relief to the Settlement Class and processing class-member claims weighs in favor of preliminary approval**

The Parties recommend a very experienced Settlement Administrator, Epiq, who is highly skilled in processing class claims and distributing the proceeds to Claimants.  As described *supra*, Section III.B.1, the Settlement Agreement provides that Claimants will receive payments based on the size of the Products purchased, whether they provide Proof of Purchase, and the total number of Claims received.  Claimants who provide Proof of Purchase may submit claims for an unlimited number of purchased Products, while Claimants who do not provide Proof of Purchase are limited to submitting claims for ten Products.  *See id.*  As explained by the 2018 Committee Notes, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  The proposed method of processing claims here strikes that delicate balance, and this factor weighs in favor of preliminary approval.

        **c.**      **The terms of the proposed award of attorney's fees weigh in favor of preliminary approval**

The Settlement Agreement provides that Class Counsel may apply for an award of Attorneys' Fees and Expenses not exceeding one-third of the Settlement Fund.  *See* ¶ 8.1.  Such request has frequently been granted in class actions in this Circuit, including consumer class actions.  *See, e.g., Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 (GRB), 2015 U.S. Dist. LEXIS 100668, at *3-4 (E.D.N.Y. July 30, 2015) (awarding 33.3% of $9.9 million settlement fund); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, at *4, *23 (E.D.N.Y. Jan. 20, 2010) (33.3% of $9.25 million settlement fund); *Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-CV-9087 (KMK), 2017 U.S. Dist. LEXIS 219060, at *8-9 (S.D.N.Y. Apr. 28, 2017) (33.3% of $4.5 million settlement fund); *Mayhew v. KAS Direct, LLC*, 7:16-cv-06981-VB (S.D.N.Y.), ECF No. 149 (33.3% of $2,215,000 settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp.

2d 358, 374 (S.D.N.Y. 2002) (33.3% of $11.5 million settlement fund).   One-third of the

Settlement Fund is even more reasonable where, like here, the size of the fund is relatively small.

*See Beckman v. KeyBank*, *N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("[T]he percentage used in

calculating any given fee award must follow a sliding-scale and must bear an inverse relationship

to the amount of the settlement" and 33% award is not excessive "because the requested amount

is consistent with the norms of class litigation in this circuit") (internal quotations omitted). As the

maximum attorney's fees and expenses Plaintiff may seek are in line with typical awards in this

Circuit, and the fee and expense request will be reviewed by the Court (and available for review

by the Settlement Class), this factor weighs in favor of preliminary approval.

### d.      Agreements required to be identified under Rule 23(e)(3)

Apart from the Settlement Agreement and other materials associated with the negotiation

of the Settlement (and disclosed herein), there are no additional agreements between the Parties or

with others made in connection with the Settlement.   *See* Reese Decl., ¶ 25.   Accordingly, this

factor weighs in favor of preliminary approval of the Settlement.

### 4.      The Settlement Treats Class Members Equitably Relative to Each Other

The 2018 Committee Notes to Rule 23 explain that this factor "calls attention to a concern

that may apply to some class action settlements—inequitable treatment of some class members

vis-a-vis others.  Matters of concern could include whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of

the release may affect class members in different ways that bear on the apportionment of relief."

Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment.

None of the concerns raised by the 2018 Committee Notes are present here.  Each member

of the Settlement Class is treated in the same manner with respect to the claims they are releasing

and their eligibility for an award, with the amount of the award dependent on the container size of the Product purchase and whether or not the Settlement Class member can provide Proof of Purchase.  *See* § 4.3.  This does not mean that the Settlement creates different tiers of Settlement Class Members who are not treated equally, but instead provides any Claimant the ability to obtain a refund commiserate with the size (and therefore likely purchase price) of their purchased Products for an unlimited number of purchases during the Class Period if they are able to provide Proof of Purchase, and a lesser, but still significant payment for up to 10 Product purchases, if they cannot.  *See id.*  Requiring Proof of Purchase for Claims for more than 10 products is fully in line with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding."  *See id.*

### D. The Proposed Settlement Is Procedurally and Substantively Fair Under Second Circuit Jurisprudence

The 2018 Committee Notes make clear that the new factors set forth in Rule 23 to determine whether to grant preliminary approval of a class settlement are meant to supersede the various tests that have evolved in each Circuit over the years.  However, as the amendments to Rule 23 have only been in effect since December 1, 2018, Plaintiff here also analyzes the proposed Settlement under longstanding Second Circuit standards.

#### 1. Procedural Fairness

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that Class Counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'"  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Hall v. Prosource Techs., LLC*, No. 14-CV-2502, 2016 U.S. Dist. LEXIS 53791, at *18 (E.D.N.Y. Apr. 11, 2016) (concluding settlement procedurally fair in light of mediation and discovery).

As discussed *supra*, the negotiations were conducted at arm's length and were undertaken by counsel who are well versed in complex class action litigation as well as cases involving misrepresentations concerning the term "natural" as applied to consumer products. *See* Reese Decl. ¶¶ 12, 14. Plaintiff and Class Counsel also conducted a thorough investigation, and evaluation of the claims and defenses prior to filing the action, and continued to analyze the claims throughout the pendency of the case. *See id.*, ¶ 13. Class Counsel conducted extensive discovery, including obtaining ingredient information, sales data, and information on the Products' distribution and pricing. *See id.*, ¶ 11. Through this investigation, discovery, and ongoing analysis, including through participation in mediation, Class Counsel obtained an understanding of the strengths and weaknesses of the Action.

For the foregoing reasons, the Settlement Agreement is procedurally fair.

## 2. Substantive Fairness

To demonstrate the substantive fairness of a settlement agreement, a party must show that the factors the Second Circuit set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), weigh in favor of approving the agreement. *See Charron*, 731 F.3d at 247. The *Grinnell* factors, many of which overlap with the newly amended Rule 23(e)'s standard, are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463). The *Grinnell* factors are used to evaluate settlements at the final approval stage, but can also be utilized for guidance at the preliminary approval stage. *See Parker v. City of N.Y.*, No. 15 CV 6733 (CLP), 2017 U.S. Dist.

LEXIS 203579, at *12 (E.D.N.Y. Dec. 11, 2017) (citations omitted); *but see Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) ("Little is gained . . . in applying *Grinnell* at such an early stage since the proposed settlement has yet to be tested in a fairness hearing . . . [and] it is apparent that several of the *Grinnell* factors themselves were designed for application at a later stage in the class settlement approval process.") (internal citations omitted).  Here, the *Grinnell* factors overwhelmingly favor preliminary approval of the Settlement Agreement.

### a.  The complexity, expense, and likely duration of litigation

This factor is the same as newly amended Rule 23(e)(2)(C)(i), and as discussed *supra*, Section IV.C.3.a, weighs strongly in favor of preliminary approval of the Settlement.

### b.  The reaction of the class to the settlement

As the Settlement Class has not yet had an opportunity to react to the Settlement it is premature to address this factor.

### c.  The stage of the proceedings and the amount of discovery completed

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

Here, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly."  *Manley*, 2016 U.S. Dist. LEXIS 43571, at *9.  Class Counsel have conducted significant discovery related to Plaintiff's claims, including serving and responding to requests for documents, interrogatories, and requests for admission.  *See* Reese Decl., ¶ 11.  Plaintiff also obtained more than 43,000 pages of documents in response to Plaintiff's discovery requests,

including sales and marketing data and pricing analysis.  *See id*.  Consequently, Plaintiff has sufficient information to evaluate the claims of the class.  *See, e.g., Morangelli*, 2014 U.S. Dist. LEXIS 7414, at *19 ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."); *Asare v. Change Grp. N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *22 (S.D.N.Y. Nov. 15, 2013) (approving settlement where parties engaged in "discovery which consisted of the exchange, analysis, and discussion regarding a significant amount of data and information as well as extensive discussions on the legal merits of the claims"); *Long*, 2015 U.S. Dist. LEXIS 122655, at *9-10 (finding third *Grinnell* factor met where the parties had engaged in informal discovery even though settlement reached before action was commenced).

### d.      The risks of establishing liability and damages

This factor is addressed by the newly amended Rule 23(e)(2)(C)(i), and as discussed *supra*, Section IV.C.3.a weighs strongly in favor of preliminary approval of the Settlement.

### e.      The risk of maintaining class action status through trial

This factor is addressed by the newly amended Rule 23(e)(2)(C)(i), and as discussed *supra*, Section IV.C.3.a, weighs strongly in favor of preliminary approval of the Settlement.

### f.      The ability of Defendant to withstand a greater judgment

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement."  *In re Sinus Buster Prods. Consumer Litig.*, No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415, at *25 (E.D.N.Y. Nov. 10, 2014).  A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Morangelli*, 2014 U.S. Dist. LEXIS 7414, at * 21.  Although Defendant here may be able to withstand a greater judgment, the agreed-to Settlement Fund is fair and adequate when weighed against the likelihood of success and overall value of each Settlement Class Member's individual damages should this Action proceed to trial.

For these reasons, this factor is neutral.

> **g.** **The range of reasonableness of the Settlement in light of the best possible recovery and in light of all the attendant risks of litigation**

"There is a range of reasonableness with respect to a settlement . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion [.]"  *Visa*, 396 F.3d at 119 (citation omitted).  "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]"  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013).

This factor is addressed by the newly amended Rule 23(e)(2)(C), and as discussed *supra*, Section IV.C.3.a, weighs strongly in favor of preliminary approval of the Settlement.  Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement Agreement is fair, adequate, and reasonable.  As such, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement.

> **E.** **The Court Should Preliminarily Certify the Settlement Class**

A court may preliminarily certify a settlement class upon finding that the court will, *inter alia*, "likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(b)(ii).  As Plaintiff sets forth below, the proposed Settlement Class satisfies each of the requirements of Rule 23(a) and Rule 23(b)(3), and, consequently, Plaintiff respectfully asks the Court to preliminarily certify the Settlement Class for settlement purposes.

> **1.** **The Settlement Class Meets Each Prerequisite of Rule 23(a)**

Rule 23(a) has four prerequisites for certification of a class: (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation.  *See* Fed. R. Civ. P. 23(a).  The Settlement Class satisfies each prerequisite.

### a. Numerosity

A plaintiff must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here there is no dispute that at least tens of thousands of people nationwide purchased Defendant's Products during the proposed class period. *See* Reese Decl., ¶ 24. Therefore, numerosity is easily satisfied. *Id.*

### b. Commonality

Under Rule 23(a)(2), Plaintiff must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* at 359 (citation, quotation marks, and brackets omitted). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only show that their injuries stemmed from a defendant's "unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015).

Here there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation, including, *inter alia*, whether the "Natural Elements" labeling and marketing of the Products was likely to deceive reasonable consumers. Resolution of this common question would require evaluation of the question's merits under a single objective standard, *i.e.*, the "reasonable consumer" test. *Mantikas v. Kellogg Co.*, No. 17-2011, 2018 U.S. App. LEXIS 34756, at *7 (2d Cir. Dec. 11, 2018). Thus, commonality is satisfied.

27

### c. Typicality

Under Rule 23(a)(3), a plaintiff must demonstrate that their claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). This includes whether "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-CV-7493, 2013 U.S. Dist. LEXIS 116720, at *53 (S.D.N.Y. May 30, 2013); *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (typicality requirement "is not demanding.") (citation omitted).

Here, Plaintiff's allegations on behalf of himself and the proposed Settlement Class focus on the same thing: Defendant's use of the statement "Natural Elements" on the labeling and marketing of the Products. Plaintiff contends that he and the proposed Settlement Class were affected by this statement. *See Robidoux*, 987 F.2d at 936-37. Accordingly, typicality is satisfied.

### d. Adequacy of representation

Under Rule 23(a)(4), a plaintiff must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiff must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class members. *Charron*, 731 F.3d at 249. Here, Plaintiff possesses the same interests as the proposed Settlement Class Members because Plaintiff and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly misleading marketing and labeling of the Products.

With respect to the second requirement, the proposed Class Counsel are highly qualified and experienced in consumer class actions. *See* Reese Decl., ¶ 14, Exs. 2-4. Proposed Class Counsel have also performed extensive work to date in identifying and investigating the claims in this litigation. *See id.*, ¶ 13. This work culminated in the detailed class Complaint and successful negotiation of the proposed Settlement Agreement. For the foregoing reasons, Plaintiff has satisfied the adequacy requirement.

### e.  Ascertainability

The Second Circuit recognizes an implied requirement of ascertainability in Rule 23. "'[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries.'" *Price v. L'Oreal USA, Inc.*, 2018 U.S. Dist. LEXIS 138473, at *11 (S.D.N.Y. Aug. 15, 2018) (quoting *In re Petrobras Sec. Litig.*, 862 F.3d 250, 257 (2d Cir. 2017)). Satisfying the ascertainability requirement "does not 'require a showing of administrative feasibility at the class certification stage.'" *Id.* (quoting *Petrobras*, 862 F.3d at 265) (internal brackets omitted). As in *Price*, here the Settlement Class is ascertainable because it "can be determined with reference to one objective criterion with definite boundaries: whether an individual purchased a Product during the class period." *Id.* As explained in the Azari Declaration, Epiq will identify potential Settlement Class Members through its targeted demographics, and the Notice Plan is expected to reach an estimated 70% of the Settlement Class. *See id.*

### 2.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *See Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiff seeks certification under Rule 23(b)(3), which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### a.  Common legal and factual questions predominate in this action

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citations omitted). The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (citations omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial are misplaced because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citation omitted).  As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266, at *4 (S.D.N.Y. Oct. 13, 2015) (citation omitted).  Furthermore, consumer fraud cases have been held to readily satisfy predominance. *See, e.g.*, *Amchem*, 521 U.S. at 625.

Here, solely for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members.  These common questions include, among others, whether the "Natural Elements" labeling and marketing of the Products was likely

30

to deceive reasonable consumers, and whether the "Natural Elements" representation was material. For purposes of settlement, these issues are subject to "generalized proof" and "outweigh those . . . subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227-28 (citation omitted); *see also Mayhew v. KAS Direct, LLC*, 7:16-cv-06981-VB (S.D.N.Y.), ECF No. 149 (certifying nationwide settlement class in consumer fraud class action involving "natural" misrepresentations); *Vincent v. People Against Dirty, PBC.*, Case No. 7:16-cv-06936 (S.D.N.Y.), ECF No. 55 (same).  Accordingly, the Settlement Class meets the predominance requirement for settlement purposes.

### b.    A class action is the superior means to adjudicate Plaintiff's claims

Rule 23(b)(3) also requires that the proposed class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Here, the class action mechanism is superior to individual actions for a number of reasons.  First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."  *Meredith Corp.*, 87 F. Supp. 3d at 661 (citation omitted).

Additionally, a class action "will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually."  *Zeltser,* 2014 U.S. Dist. LEXIS 135635, at *8 (citation omitted).  The average purchase price of the largest container of the Products is less than $8.00—thus, the potential recovery for any individual Settlement Class member is minimal.  *See* Reese Decl., ¶ 15.  As a result, the expense and burden of litigation make it virtually impossible for the Settlement Class Members to seek redress on an individual basis.  By contrast, in a class action, the cost of litigation is spread across

31

the entire class, thereby making litigation viable.  *See, e.g., Tart*, 2015 U.S. Dist. LEXIS 139266, at *5.  "Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications."  *Zeltser* at *8-9 (citing, *inter alia*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).  For all of the foregoing reasons, a class action is superior to individual suits.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court should preliminarily certify the Settlement Class.

### F.      The Court Should Approve the Proposed Notice Plan

Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by [a proposed settlement] if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the [proposed settlement]."  As part of this process the "parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  Rule 23(e)(1)(A).  As discussed *supra*, Plaintiff contends that the Court will likely be able to approve the proposed Settlement, and certify the Settlement Class for purposes of judgment.  *See supra*, Sections IV.C and IV.E.

The substance of the Notice Plan also satisfies Rule 23.  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Visa*, 396 F.3d at 113 (citations omitted).  The Court is given broad power over which procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness that the Constitution's due process guarantees impose.  *See Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

"When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (summary order) (quoting Fed. R. Civ. P. 23(c)(2)(B), (e)(1)).   The notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).   "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Visa*, 396 F.3d at 114.   And the recent amendment to Rule 23(e)(2)(B) now makes explicit that notice may be provided by electronic or "other appropriate means."

Here the robust proposed Notice Plan, described *supra*, Section III.D, handily meets the requirements of due process and the Federal Rules of Civil Procedure.   Indeed, in a class case where records of purchasers are not readily available, Plaintiff's proposed Notice Plan may be the only type of notice practicable.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court: (1) certify the Settlement Class and appoint Plaintiff as the class representative and his counsel as Class Counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the form and manner of the class action settlement notice; (4) preliminarily certify the Settlement Class for purposes of settlement only; (5) appoint Epiq as Settlement Administrator and direct it to commence the Notice Plan; and (6) schedule a Fairness Hearing to consider final approval of the Settlement.

Dated:  March 1, 2019

**REESE LLP**

By:   */s/* Michael R. Reese
      Michael R. Reese
      100 West 93rd Street, 16th Floor
      New York, New York 10025
      Telephone: (212) 643-0500
      Facsimile: (212) 253-4272
      *mreese@reesellp.com*

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
*sultzerj@thesultzerlawgroup.com*

**HALUNEN LAW**
Christopher Moreland
1650 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099
*moreland@halunenlaw.com*

*Counsel for Plaintiff and the Class*

34